ROBERT J. WILSON
2151 N. Avenida Tabica
Green Valley, AZ 85614
Telephone: 520-982-1658
Email: bobbysvisa(at)gmail.com
PLAINTIFF,
in Propria Persona

FILED ___ LODGED
___ RECEIVED ___ COPY

FEB 8 2019

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

CV19-0068 TUCJAS

| | |
|---|---|
| ROBERT J. WILSON, | NO. |
| Plaintiff | |
| vs. | **COMPLAINT** |
| GOVERNING BOARD OF MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT; MARIA HARPER-MARINICK, in her individual and official capacity; and KATE SMITH, in her individual and official capacity; | |
| Defendants. | (Action for Constitutional Violations And Damages) |
| | Jury Demand. |

Plaintiff, in Propria Persona, alleges as follows:

**I. JURISDICTION.**

1. The United State District Court has original jurisdiction over this matter pursuant to

28 U.S.C. Section 1331. This action arises under the Constitution of the United States of

America, Title 42 United States Code Section 1983 and the Arizona Constitution, Article 2, Sections 4 & 13.

## II. VENUE.

2. Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. 1391 (b). This Court has personal jurisdiction over the Defendants in this matter as they are all residents of the District of Arizona, and the underlying act of this complaint took place in Pima County in this District of Arizona and the Plaintiff is a resident of Pima County and the State of Arizona.

## III. PARTIES.

### A. Plaintiff.

3. Plaintiff, Robert J. Wilson ("Wilson") is a citizen of the United States and a resident of Pima County Arizona, and was a resident of Arizona during all the relevant dates of this Complaint. He graduated from the University of Texas in 1971 with B.A. Degree in Political Science and graduated from Texas Tech University in 1973 with J.D. Degree and passed the Texas Bar Exam and was admitted to practice law in Texas in April of 1973. He practiced law in Texas and taught business law and political science at several Texas Colleges until May of 1994 when he permanently moved his residence to Maricopa County, Arizona. He has maintained his Arizona residence since that time. He has never taken the Arizona Bar Exam and is not authorized to practice law in Arizona. He was hired by MCCCD in 1995 to teach various college courses as an adjunct college instructor and by 2010 he became considered a *course development employee* within the faculty of Rio Salado College's Paralegal Program, a campus of the Maricopa County

Community College District and he qualified to be considered an employee and part of their State Retirement Program.

In May of 2018 Wilson qualified as a State Republican Candidate for the Arizona Senate. On or about August 22, 2018 Defendants fired Wilson, without cause, via a single telephone call lasting about one minute.

**B. Defendants**

4. Defendant, Maricopa County Community College District ("MCCCD") was established in 1962 under the provisions of state legislation enacted by the Arizona State Legislature in 1960. The MCCCD is a political subdivision of the State as defined in A.R.S Section 38-431(5) and therefore, is a public entity within the meaning of A.R.S. Section 12-820 (7).

5. Defendant, MCCCD's Governing Board, is a board of a political subdivision within the meaning of A.R.S. Section 12-820(7). Linda Thor is president of said Governing Board.

6. Defendant, Maria Harper-Marinick, ("Marinick"), is the current Chancellor of the MCCCD and serves as its chief executive officer.

7. Furthermore, Marinick is a public employee of a public entity (MCCCD) within the meaning of A.R.S. Section 12-820(6) and is being sued in her official capacity as Chancellor of the MCCCD.

8. Defendant, Kate Smith, is the president of the Rio Salado College Campus of MCCCD, and serves as its chief executive officer and is also a public employee of a public entity within the meaning of A.R.S. Section 12-820(6). She is sued in her official

capacity as president of Rio Salado College.

## IV. PLAINTIFF'S ACTION

9. This is an action seeking monetary damages against the Defendants individual and in their named capacities for the following violations of Wilson's Federal and Arizona Constitutional and Common Law rights under the provisions of 42 U.S.C. Section 1983, Civil Rights Act, and the Arizona Constitution, Article 2, Sections 2 & 13, for violations of his Procedural and Substantive Due Process employment rights as protected under the 14th Amendment and for violations of his employment rights as guaranteed under that Amendment's Equal Protection of the Laws clause; and furthermore, for violations of his 1st Amendment Freedom of Speech rights as a public employee and private citizen running for public office in Arizona.

## CONDITIONS PRECEDENT TO FILING

Plaintiff has performed all conditions precedent to filing this Complaint; including giving the required Notice of Claim to Defendants that complies with 12 A.R.S. Section 821-821.01. More than sixty days has elapsed without any response from Defendants to Wilson's said Claim.

## V. FACTUAL ALLEGATIONS

A. **Plaintiff was terminated unlawfully as a long-term employee of MCCCD, without cause.**

10. Plaintiff Wilson was hired in 1995 as an adjunct law instructor by MCCCD, and as a condition of his employment, he was required to apply to and successfully be certified by the Arizona College Certification Department. That State of Arizona official department

4

was responsible at that time to determine whether or not an applicant to be a college instructor teaching in Arizona colleges possessed the necessary skills and good character to teach college courses in Arizona. Wilson applied and was approved and certified by that State Office to teach any college level political science or law related course in Arizona colleges.

11.  Thereafter, Wilson was formally hired by MCCCD in the summer of 1995 to teach various college level courses as an adjunct instructor at their various Campuses. He taught primarily at their Rio Salado College Campus in the Business Department, teaching one or more of their Business Law Courses each school session. In 1999 he was honored as the Outstanding Adjunct Business Instructor at Rio. His employment contracts were always in writing and for term periods.

12.  On or about the school year 2010-2011, everything changed. Rio asked Wilson to leave the Business Department at their campus and become a ***course-development instructor*** in their new and as yet uncompleted, Paralegal Department. Defendants needed Wilson's broad legal background and experience for the development of a wide variety of specialized paralegal student courses that would lead to a two-year associates college degree and/or a two-year certificate in Paralegal Studies. He was promised continued employment teaching and developing courses for the Rio Paralegal Department for as long as he wanted the job.

13.  It was envisioned that twelve to eighteen new college paralegal courses would need to be developed and written by someone in order to accomplish this mission of creation of a Rio Paralegal Department.

5

Wilson became that *someone*, and wrote and developed most of those Paralegal Courses over the next few years, including creation of two honors courses and assisting in development of Rio's Paralegal's Internship Program for advanced paralegal students.

14. Wilson became *qualified as an employee* of MCCCD and Rio during this time period (2010-2012 and thereafter), due to his greatly increased workload. His pay increased from MCCCD and Rio to the point that he became a member of the MCCCD State Retirement Program and he had to confirm that he had read and understood the Rio Employee's Staff Policy Manual. Furthermore, the PAR courses he developed had to be constantly revised by Wilson as the laws and aspects of the legal world changed, such as the DACA Executive Immigration Orders.

15. Wilson had previously been notified by Rio during this time period that Rio had gone *Green* and no more written employment contracts would be used by their college, and thereafter an employee/instructor/developer such as Wilson would simply be notified by email of the paralegal courses they would be teaching each session and the would simply accept those teaching assignments by email communication to the Rio Faculty Services Department. Those were the new type of contracts used by Rio.

16. Wilson was assured by the Rio Salado College staff and his Chair that he would be teaching the "PAR" courses that he had written and developed during the future school sessions and only when he exceeded the Rio course teaching load limit would other instructors be allowed to teach "his" courses. This policy continued up to the date of his unlawful termination. He was teaching between three to five PAR courses each and every school session at Rio at that time (as per his contract) up to the date of his unlawful

termination and he had already signed a Rio *green contract* to teach three to five courses in the fall session for Rio **before** his termination.

17. Wilson was never afforded *notice* of the reasons for his untimely termination, nor was he afforded an *opportunity or hearing* to defend himself of whatever were the unlawful reasons for his termination, if any.

18. Wilson was never offered an opportunity to *clear his name* by these Defendants thereby basically destroying his chances for rehire at another college or employer because he was now officially branded *not for rehire* by Defendants where he had been employed at for over twenty-three years.

19. Wilson had qualified as a Republican candidate for the Arizona State Senate in May of 2018 and was actively campaigning for that office at the time he was wrongfully terminated by these Defendants. He suspects that his candidacy on the Republican ticket was a motivating factor in Defendant's unlawful decision to terminate his employment.

20. Defendants, especially Chancellor Marinick, in clear violation of MCCCD's own Staff Policy Manual (Policy A-14), was openly hostile to members of the Republican Party and President Trump at faculty events and tried to influence other staff and faculty on the outcome of future elections. Defendant Board did nothing to stop said unlawful political animus toward Republican candidates and our President Trump, who was openly ridiculed by said Chancellor at official MCCCS events.

## **PLAINTIFF'S CAUSES OF ACTION**

### **Precept:**

All the following listed and discussed causes of action that follow this paragraph have

certain legal doctrines that attach to *each cause of action pled* by Plaintiff; and to avoid repeating these certain legal doctrines, they are listed here and understood to apply to all relevant causes of action plead hereunder and to apply to all of these named Defendants.

(1) The named Defendants violated 42 U.S.C. Section 1983 in their described termination of Plaintiff and thereby they qualify as "persons who, acting under color of any statute, ordinance, regulation, custom, or usage of any State subjects or causes any citizen of the United States…deprivation thereof of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…"

(2) Arizona Employer Protection Act: 23 A.R.S., Section 1501

(a) Creates a valuable employment property interest for the employee who has a written contract; (b) Creates a protected property interest and employment rights for an employee if he qualifies for inclusion in an employer's *employment manual, or similar document*; (c) creates a cause of action for the employee who is wrongfully terminated in violation of a state statute or public policy.

**(3)** Defendants, including MCCCD, "are not financially supported by the State of Arizona Treasury." MCCCD is part of Maricopa County, a part of Arizona's government structure. The Defendants do qualify as acting under color of the State of Arizona at all times relevant to this case and are governed by State Statutes. Their liabilities are not paid out of the State Treasury. By law, MCCCD is self-supporting and supported financially by, and is a part of Maricopa County Arizona's government structure.

# FIRST CAUSE OF ACTION

## Violations of Procedural Due Process of the Law.

(Title 42 U.S.C. Section 1983; 14th Amendment to the U.S. Constitution)

(Arizona Constitution, Article 2, Section 4)

21. Plaintiff realleges and incorporates by reference herein the allegations above contained.

22. Defendants unlawfully terminated Wilson without notice and without an opportunity to defend himself of whatever their reason, if any, for his untimely termination. Wilson was considered a public employee at the time of his termination and was a protected employee guaranteed due process under the written terms of the Defendant's Staff Policy Manual (Policy A-3).

23. Wilson was deprived of a valuable property interest (his employment rights) by the said actions of Defendants. His employment rights are protected and set forth in Arizona Employment Protection Act (A.R.S. Section 23-1501, et seq.). It states that an employee who has a written contract with his employer owns an enforceable right of employment. Wilson had two express agreements with these Defendants in the form of "green contracts" at the time of his termination and was actually a protected "employee" under the terms of the Defendants' own Staff Policy Manual from termination without cause or notice or opportunity to defend themselves. He has now been deprived of his rights under those written green contracts and Defendants' Employer Manual and furthermore deprived of his *assured future employment*.

24. Wilson has not only lost his future employment income, he was stripped of his rights

as a qualified member of Arizona State Retirement Plan and his severance pay for his over twenty years of continuous employment by these Defendants.

25. Wilson had the guaranteed right under the above sited Federal Laws and Constitutions to *notice and hearing* before being deprived of his valuable property interests by these Defendants. Wilson has suffered grievous losses of income, employment rights and reputation due to the unlawful actions above said committed by Defendants in depriving him of his procedural Due Process rights.

26. As a direct and proximate result of Defendants' above said intentional actions and disregard for Wilsons' rights, he has suffered damages including loss of employment interests, reputation, severe anxiety, loss of ordinary pleasures of life and will continue to suffer for the foreseeable future.

## SECOND CAUSE OF ACTION

**Violations of Substantive Due Process of the Law.**

(Title 42 U.S.C. Section 1983; 14th Amendment to the U.S. Constitution)

(Arizona Constitution, Article 2, Section 4)

27. Plaintiff realleges and incorporates by reference herein the allegations above contained.

28. Plaintiff contends that Defendants deprived him of Substantive Due Process when they failed to afford him an opportunity to know the charges or reasons for his termination and failed to afford him a name clearing opportunity or hearing.

29. Plaintiff was named on three separate occasions over the years as an *Outstanding Instructor* during his many years at the Rio Campus of MCCCD.

30. Wilson had never been disciplined, nor had any of the Defendants' staff, employees, or students at any of the MCCCD Campuses filed any complaints against him. He was a valuable employee who was essentially the backbone of the Rio's development team for the new PAR Department.

31. Wilson was entitled under the provisions of the above said Statutes and Constitution to substantive due process by Defendants and should have been afforded a name-clearing hearing opportunity by Defendants in order to defend himself of the unknown allegations and have the chance to clear his name. He has now been essentially *branded unemployable* by the actions of these Defendants in failing to afford him an opportunity to learn why he was terminated and to defend his name and reputation.

32. As a direct and proximate result of Defendants above said intentional actions and disregard for Wilson's rights, he has suffered damages. Including but not limited to: loss of employment interests and income, reputation, suffered severe anxiety and depression, loss of ordinary pleasures of life and will continue to suffer those damages for the foreseeable future.

## THIRD CAUSE OF ACTION

**Violations of Equal Protection of the Law.**

(Title 42 U.S.C. Section 1983; 14th Amendment to the U.S. Constitution)

(Arizona Constitution, Article 2, Section 13)

31. Plaintiff realleges and incorporates by reference herein the allegations above contained.

32. Both the Federal Laws and State of Arizona Laws create Constitutional and Statuary

Protections for persons such as the named Plaintiff for violations of a citizen's right to equal protection of our laws.

33. Wilson had achieved by the date of his wrongful termination, the employment status of a *protected employee* under the provisions of the MCCCD Staff Policy Manual. As such a protected employee, he was entitled to an adequate Notice and Hearing to clear his name or answer allegations of wrongdoings affected his ability to perform his assigned duties a course developer and PAR instructor.

34. Because the acts and omissions of these Defendants in their unlawful termination of Wilson, he was treated not as an employee protected under terms of said Manual, but was fired without cause as could be done to a temporary worker with no rights of employment.

35. He was thereby denied his *equal rights of treatment* with the other recognized employees of Defendants. In other words, he was treated unlawfully and in violation of his protected rights under the express terms of said Staff Policy Manual of due process and equal rights of employment.

36. Wilson therefore, suffered emotional and monetary damages, as a proximate result of these wrongful acts committed by Defendants in depriving him of equal employee treatment.

## FOURTH CAUSE OF ACTION

**Violations of Plaintiff's Freedom of Speech Rights.**

(Title 42 U.S.C. Section 1983; 1st Amendment to the U.S. Constitution)

(Arizona Constitution, Article 2, Section 6)

37. Plaintiff realleges and incorporates by reference herein the allegations above contained.

38. Every person in this Country and State has the guaranteed right to speak, write, and publish freely; and that includes this Plaintiff.

39. In May of 2018, Plaintiff became an approved candidate for the Arizona Senate, to represent Arizona Legislative District 2 (LD2). He qualified under the provisions of the Clean Elections Act of Arizona and his name was on the Arizona Primary Ballot.

40. When a private person, such as Wilson, becomes a public figure and political candidate for state office, newspapers often choose sides in a political race and will print any gossip and possible false information to attract the general public's attention.

41. In August of 2018 the local area Democrat-controlled newspapers, which already held leanings in favor of Democrat candidates, and were openly anti-Republican, published false statements and hateful gossip concerning Plaintiff and his candidacy.

42. Wilson soon thereafter received a single telephone call that he was *relieved of duties*, at Rio.

43. The caller, Wilson's direct supervisor at Rio, mentioned that she had received her orders, *from above*, to fire him because of some article in the newspaper. She did not specify what article or story or newspaper had caused him to be dismissed.

44. Wilson was thereby denied his right of freedom of speech by these Defendants because he was fired for some unknown reason based something published in a local newspaper.

45. Wilson had been at several public events hosted by these Defendants, and held on

13

Defendants' premises and had personally listened to anti-Republican and anti-Trump speeches by such Defendants as this Chancellor.

There was an obvious anti-republican atmosphere created by the Defendants and was pervasive on their campuses.

46.   Defendants' Staff Policy Manual expressly states that in Section A-14, that it is forbidden for any employee, (including the Chancellor) to try to influence the outcome of an election, or to use their official position to influence subordinates for political purposes.

47.   Wilson personally saw and heard violations of these explicit political safeguards by Defendants on the campuses of Defendants prior to his termination.

48.   Wilson contends he was quite possible fired because of his Republican Party affiliation and his candidacy for state office on the Republican ticket.

49.   Wilson's termination was therefore, clearly in violation of his right to free speech as a political candidate, combined with Defendants' anti-Republican bias and animus, and the Defendants violation of their own Staff Policy Manual provisions.

50.   Wilson therefore, suffered emotional and monetary damages, as a proximate result of these wrongful acts committed by Defendants in depriving him of rights to free speech by their wrongful actions toward him as a legitimist Republican candidate for state public office.

**PENDENT CAUSES OF ACTIONS AGAINST THESE NAMED DEFENDANTS**

**As authorized by federal statute: 28 U.S.C. Section 1367 ET. Seq.**

# FIFTH CAUSE OF ACTION.

## Intentional Infliction of Emotional Distress

## By Defendants' Civil Conspiracy

37. Plaintiff realleges and incorporates by reference herein the allegations above contained.

38. Two or more of the named Defendants conspired to harm and damage Wilson, individually, and/or, as a legitimate candidate for state public office by the commission of one or more of the above said torts, such as:

39. Violating his rights to Due Process;

40. Not affording him his rights to Equal Protection of the laws;

41. Terminating him by denying him his rights of Freedom of Speech; and,

42. By their *outrageous conduct* and treatment of Wilson, an employee, instructor, and course developer by violating their own Staff Employee Manual rights and privileges, pursuant to their civil conspiracy to harm and terminate him.

43. And furthermore, by **custom and usage**, Plaintiff was no longer just an adjunct instructor by 2012, he had been assured of continued employment as a PAR course developer and PAR instructor for as long as he performed his duties to develop and update PAR courses for Rio.

44. Wilson therefore, suffered emotional and monetary damages, as a proximate result of these wrongful acts committed by Defendants.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL FACT ISSUES**

# PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Wilson prays for judgment against Defendants as follows:**

A. That this court declare the relevant actions of Defendants complained of herein to be in violation of the Civil Rights Act of 1871, Title 42 United States Code Section 1983 and the 14TH Amendment and 1st Amendments to the United States Constitution and any relevant Arizona Constitution provisions.

B. That actual damages be awarded to Plaintiff against these Defendants, jointly and/or severally, for the damages to Plaintiff's past and future physical well-being, his emotional and psychological injuries, damages to his reputation, his past & future economic losses, his loss of future educational opportunities, his loss of career prospects, all in the reasonable amount of ten million dollars ($10,000,000);

C. That punitive damages be awarded to plaintiff against these Defendants, jointly and/or severally, in the reasonable amount of ten million dollars ($10,000,000) for their *outrageous treatment of Plaintiff and their intent to destroy him and his career by their malicious acts and omissions;*

D. That Plaintiff be awarded all his reasonable expenses for expert witnesses fees, disbursements, and discovery expenses and his court costs;

E. That Plaintiff recover pre-judgment and post-judgment interest on all damages awarded;

F. That Plaintiff be awarded all other relief that this court deems just and proper under these circumstances.

DATED this 7th day of February 2019.

Robert J. Wilson,

**Plaintiff,** in Propria Persona